## HUFF v. THE STATE.

1. The evidence authorized a conviction of assault with intent to murder.
2. Grounds for new trial complaining of the admission of testimony cannot be considered by this court unless they show that the testimony was objected to when offered, and what the objection was. April 23, 1890.

Criminal law. Assault with intent to murder. Verdict. Evidence. Practice. Before Judge LUMPKIN. Oglethorpe superior court. October term, 1889.

Zack Huff was charged with assault with intent to murder Nellie Young. Upon the trial M. T. Young testified that he was the father of Nellie Young, who was a young lady. Defendant had been in his employ-

ment, and six days before the shooting he and defendant had had a little difficulty, in consequence of which defendant left his place on the day of the difficulty, but defendant's wife did not leave on that day, though she did leave before the shooting occurred.  Defendant was familiar with the premises.  The night the shooting occurred was clear but smoky, and the moon was not giving much light.  Nellie was sitting with her sisters on the front porch of witness's house, and witness and his son were on the back porch.  Nellie had on a dress which would have made her more easily discernible than the others.  Witness heard a pistol fire, and heard his daughters scuffling the chairs about and holloaing that somebody was shooting at them.  The ball did not miss Nellie's head more than eighteen or twenty inches. The sound of the pistol was in the front of the house, about twenty-one steps from where the shot took effect, and was in full view of the place where the young ladies were sitting.  Witness thinks defendant could have seen and distinguished persons that distance on that night, and if they were talking could have heard them, and he could have heard witness and his son talking on the back porch.  Defendant could not see Nellie as far as he could see the others.  This shooting occurred in Oglethorpe county on May 6, 1889.  Witness heard defendant make a statement on the committing trial.  He stated that he came there and did shoot, that he was down at the big gate when he did the shooting.  When he made that statement, witness said he must have had a damn crooked barrel, he shooting one direction and the bullet coming back to the house.  If defendant had been down at the big gate the ball never would have come towards the house at all.  Before defendant made the statement above mentioned, he begged witness to forgive him and take him back, and witness refused to do it.    If he had not

acknowledged it, witness would never have known any-
thing about it.   Never knew of anybody shooting at his
house before, and that  was the only shooting that was
ever done about there that he knew of.

One Maxwell testified that on  the  morning  after
defendant had been put in jail, he went to give defendant
his breakfast, and asked him about the difficulty and if
he did it.   He said that if what Mr. Winn  had  told
him (Winn was the person who arrested him) was true
he could prove himself clear ; that Winn said the shoot-
ing occurred the  same  night  the  difficulty  happened
between  him  and  Young.   Witness asked  him if he
could prove where he was, and prove himself clear all
the balance of that time up to now.   Defendant said
he did not know that he could.   Witness told him that
Winn did not know the particulars ; that  the  shooting
was not done on that night, but  was  about  a  week
afterwards ;  that  defendant's  committal  trial  would
come off the next day, and if he had any witnesses he
wished to have on that trial, to  let  witness  know who
they were and he would send and get them, and was
going to notify Young and the other parties to be there.
Defendant said he did  not  know that he had  any wit-
nesses, and witness told  him  he  would  have  to  go to
trial anyway.   He asked witness what he thought about
the case, and  witness told  him  he  did  not  know the
facts, and could not tell anything about it ; that  if  de-
fendant would tell  him  all  he  knew, may  be  witness
could tell more about it.   Defendant said  if  he  had to
go to trial and  had to tell the truth  about it, he would
tell witness what did happen.   Witness told him to tell
him what happened, and he would tell what he thought
about  the  case.   Defendant  said  he  went  down  to
Young's that  night  to  see about his wife, not having
heard from her for about a week.   He learned that she
had gone from Young's place, and then went on down to

Young's and went through a big gate, a little piece from the house, and pulled out his pistol and shot it off; that he did not shoot towards the house and did not aim to shoot anybody; that after he shot he got back over the fence, went through a cotton-patch to the road and on back to Madison county that night. It is seven or eight miles from Oglethorpe county site to Young's. One Atkins testified that defendant, after he was put in jail, stated in witness's presence that he left Madison county (describing the trip and purchase of a pistol) and came to Young's, and at the gate pulled out his pistol and shot. Witness asked him what he did that for; and he said he did not know, that he did not aim to shoot anybody and that he wanted "old marster" to come there and take him out, he would work for him as long as he wanted him to work, or do anything. This statement was made in the presence of the sheriff, but witness does not know what the sheriff had told defendant before this conversation occurred.

For the defendant, a witness who lived in Madison county seventeen or eighteen miles from Oglethorpe county site, testified that on the 6th of May, 1889, defendant was working at his house, and he saw defendant there at supper-time that night, and also saw him there about half an hour by sun the next morning, the usual time the hands got their breakfast, and that he was there the two following days. Witness did not know where defendant stayed that night, but defendant said he was going down the road. The supper-time was about dark.

Defendant was found guilty. He moved for a new trial on the general grounds, and because of error in admitting the testimony of Young and others, as to a previous difficulty with defendant and as to an alleged confession by him. The motion was overruled, and he excepted.

HAMILTON McWHORTER, by J. H. LUMPKIN, for plaintiff in error.

W. M. HOWARD, solicitor-general, by HARRISON & PEEPLES, for the State.

SIMMONS, Justice.

There was sufficient evidence to authorize the finding of the jury in this case. The 4th and 5th grounds of the motion for a new trial, which complain of error in admitting the testimony of Young and in admitting the alleged confession of defendant, do not state that the objection was made at the time, nor what the objection was; and therefore, under the repeated rulings of this court, we cannot consider these grounds.

*Judgment affirmed.*